UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**MAXWELL SMITH ET AL**  :  **CASE NO.  2:21-CV-04402**

**VERSUS**  :  **JUDGE JAMES D. CAIN, JR.**

**URBAN OIL & GAS GROUP L L C ET AL**  :  **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the Court is "Defendants' Motion to Dismiss" (Doc. 4), wherein Defendants, Urban Oil & Gas Group, LLC, Urban Oil and Gas Partners A, LP, Urban Fund I, LP, Urban Fund I GP, LLC, Urban Oil and Gas Partners A-1, LP, Urban Fund D-1, LP, Urban Fund IV, LP, and Urban Fund IV GP, LLC move to dismiss Plaintiffs Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## BACKGROUND

Plaintiffs allege the following in their Complaint. On February 28, 2021, fourteen-year-old Zalee Day-Smith was on top of an oil tank when the tank suddenly exploded.[1] Zalee died as a result of the explosion.[2] Plaintiff, Maxwell Smith was Zalee's natural father and Plaintiff Lenora Day was Zalee's natural mother.[3] Plaintiff Mattisun Miner was Zalee's natural sister and Plaintiff TDS, a minor, was Zalee's twin brother.[4]

---

[1] Complaint, ¶ 4.
[2] *Id.* ¶ 5.
[3] *Id.* ¶¶ 27–28.
[4] *Id.* ¶¶ 29–30.

The oil tank that exploded was part of a battery of tanks ("Battery") which was connected to certain nearby wells.[5] According to the Louisiana Department of Natural Resources ("LDNR"), Defendant, Urban Oil & Gas Group, LLC is the listed operator of Bear Field, and Defendant Urban Oil & Gas Group, LLC has been the listed operator since July 2012.[6] On February 8, 2021, the Battery and its associated wells were transferred from Defendants, Urban Fund I, LP, Urban Oil and Gas Partners A, LP, and Urban Oil and Gas Partners A-1, LP, to Defendants Urban Fund IV, LP and Urban Fund D-1, LP.[7]

Plaintiffs allege that all Defendants had some degree of control over the Battery when the incident occurred.[8] Plaintiff also allege that there was a dangerous amount of flammable gas and liquid in the tank, and Defendants failed to take proper precautions to monitor the tank and its levels of flammable contents prior to it exploding.[9]

Plaintiffs assert wrongful death, survival, and bystander causes of action and allege that Defendants were grossly negligent in (1) causing the tank to explode on February 28, 2021,[10] and/or (2) failing to maintain any fencing, gates, or warnings that would have kept the public safe.[11] Plaintiffs also allege that Defendant are (1) liable for Plaintiffs' damages because the Defendants' premises constituted an attractive nuisance,[12] and/or (2)

---

[5] *Id.* ¶ 6.
[6] *Id.* ¶ 7.
[7] *Id.* ¶ 8.
[8] *Id.* ¶ 10.
[9] *Id.* ¶ 11.
[10] *Id.* ¶¶ 11–13.
[11] *Id.* ¶¶ 15–20.
[12] *Id.* ¶¶ 21–23.

Defendants are absolutely liable for Plaintiffs' damages because Defendants engaged in an ultrahazardous activity.[13]

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curium) citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989). The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities, Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

---

[13] *Id.* ¶¶ 24–26.

"In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . ." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955.

## LAW AND ANALYSIS

Defendants move to dismiss the Complaint for the following reasons:

    1.    Under Louisiana Revised Statute 9:2800.4(E), owners of oil and gas property are not liable to persons who unlawfully enter upon their property, for any injury or death occurring on the

       property, unless the injury or death is caused by the owner's intentional act or gross negligence.

2. Plaintiffs have not alleged the elements of gross negligence and have failed to explain why Zalee was on top of the oil tank and/or Plaintiffs admit that the tank was ignited by an unknown cause.

3. Plaintiffs have not alleged the elements for attractive nuisance under Louisiana law or alleged sufficient facts to state a claim for relief under that theory.

4. Plaintiffs have not alleged a plausible claim of absolute liability for ultrahazardous activity because they have failed to allege that oil equates to toxic gas, and the storage of oil has never been deemed ultrahazardous.

5. Zalee's brother and sister have failed to state a plausible bystander claim because they do not allege that they saw their sister in an injured or deceased state.

*Negligence and Gross negligence*

Plaintiffs maintain that Defendants are liable for negligence and gross negligence. Defendants, citing Louisiana Revised Statute 9:2800.4(E), maintain that because they are owners of oil and gas property, they cannot be held liable for negligence because Zalee unlawfully entered their property.

Under § 9:2800(E) of the Louisiana Revised Statutes, owners of oil and gas property are not liable to persons who unlawfully enter upon their property for any injury or death which occurs while on the property, unless such injury or death is caused by the owners' intentional act or gross negligence. *See, e.g., Wall v. Kelly Oil & Gas Company, Inc.*, 27 So.3d 1071 (La.App. 2nd Cir. 2009) *writ denied*, 31 So.3d 372 (La. 04/05/2010).

Plaintiffs argue that Defendants are liable for negligence under Louisiana Civil Code articles 2315 and 2316 (negligence) and 2317.1 (premises liability). Under premise liability, the plaintiff must prove four elements: (1) the object was in the defendant's custody; (2) the object contained a vice or defect which presented an unreasonable risk of harm to others; (3) the defective condition caused the injury; and (4) the defendant knew or should have known of the defect. *Conner v. Kraemer-Shows Oilfield Servs., LLC*, 33 F.Supp.3d 725, 728 (W.D. La. 2014). To determine an unreasonable risk of harm, a court considers four factors: "(1) the utility of the object; (2) the likelihood and magnitude of harm, including the obviousness of the risk; (3) the cost of preventing harm; and (4) the nature of the plaintiff's activities." *Id.* at 729.

Louisiana Revised Statute § 9:2800.4(E) limits Articles 2315–2317.1. However, Plaintiffs assert that Louisiana Revised Statute § 9:2800.4(E) is an "exception immunity statute," and has been held to "be strictly construed against immunity and in favor of general notions of tort liability under La.C.C. art. 2315." *Daigre v. Int'l Truck & Engine Corp.*, 67 So.3d 504, 510 (La. App. 4 Cir. 5/5/11) (*citing Weber v. State*, 635 so.2d 188, 193 (La. 4/11/94). A defendant urging the protections of § 9:2800.4 "bears the burden of proving entitlement to the immunity." *Daigre*, 67 So.3d at 510 (citing *Banks v. Parish of Jefferson,* 990 So.2d 26, 30 (La.App. 5 Cir. 6/19/08); *Barabay Prop. Holding Corp. v. Boh Bros. Const.co., L.L.C.*, 991 So.2d 74, 79 (La.App. 1 Cir. 5/2/08); *Walls v. Am. Optical Corp.*, 740 So.2d 1262, 1267 (La. 9/8/99).

Plaintiffs note that only two courts have applied § 92800.4(E) to determine the liability of an oil, gas, or mineral property owner for gross negligence, which Plaintiffs

maintain are distinguishable. *See Wall v. Kelly Oil & Gas Company, Inc.*, 27 So.3d 1071 (La.App. 2nd Cir. 2009); *see also Roton v. Vernon E. Faulconer, Inc.*, 966 So.2d 790, 791 (La.App. 2 Cir. 10/03/07). In *Wall*, the defendant/operator had installed a fence and a gate and posted numerous and various detailed warning signs. The court concluded that the defendant was not grossly negligent. In *Roton,* the defendant/operator had taken several safety measures including a guardrail and multiple detailed warning signs. The court concluded that the defendant operator had not been grossly negligent because the pump site had reasonable safety measures in place in the form of a fence and warning signs. *Roton*, 966 So.2d at 796.

Plaintiffs rely on *Killough v. Bituminous Cas. Corp.*, 674 So.3d 1091 (La.App. 2 Cir. 5/8/96) wherein the operators of an oil well were found liable for injuries to a nine-year-old boy who was injured while playing on the well. *Id.* at 1095. The boy was picking blackberries around his great-grandmother's house which was about 129 feet from the well site, but not located on the oil company's property. The well site was located about 500 feet from a school and a playground.

The well site was not fenced off, did not have any safety barriers, or warning signs. The *Killough* court affirmed that under such circumstances, the well site was unreasonably dangerous because it "was open to the public without adequate warnings, safety barriers or fencing." *Id.* The Court also found that the site was particularly unreasonably dangerous given its proximity to residences and a school. *Id.* Significantly, the court did not apply the restriction of gross negligence found in Louisiana Revised Statute § 9:2800.4(E) because the well property was so open to the public—in close proximity to residences and schools,

with no fencing or other barriers—that the boy could not be said to have entered the well property "unlawfully."

Under Louisiana law, gross negligence is defined as the "want of even slight care and diligence" *Ambrose v. New Orleans Police Dept. Ambulance Service,* 639 So.2d 216 (La.1994), and the "want of that diligence which even careless men are accustomed to exercise." *Id*. It has also been defined as the "entire absence of care" and the "utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others." *Id.* Additionally, gross negligence has been described as an "extreme departure from ordinary care or the want of even scant care." *Id.* at 1074–1075.

Plaintiffs allege that Defendants failed to take proper precautions to monitor the tank levels. Defendants argue that Plaintiffs fail to allege what the proper precautions were, what type of monitoring was required, and how the levels of contents caused the explosion.

Plaintiffs argue that Defendants failed to maintain, service, or examine the tank's "hatch or valve" per industry standards which contributed to the dangerous condition of the tank. Defendants complain that Plaintiffs do not allege the source or nature of the industry standards or how the alleged failures caused the explosion.

Defendants argue that Plaintiffs' admission that the tank was ignited by an unknown cause makes the allegations in the Complaint incomplete, speculative, and conclusory as to causation, noting that causation is a crucial element of all causes of action. Finally, Defendants argue that Plaintiffs' allegations of gross negligence are threadbare, conclusory, and unsupported.

Plaintiffs allege that Defendants failed to place fencing, gates, a barrier, and warning signs at the well site which was less than or equal to 500 feet from Zalee's home.[14] Plaintiffs allege that the absence of security measures or warnings signs, as is the industry custom for operators and owners of oil storage facilities such as the Battery, led Decedent and Plaintiffs to believe that the Battery was inactive and abandoned.[15] Plaintiff further allege that because the Battery was within hundreds of feed of residences and commercial property, Defendants should have anticipated the presence of minors at or around the Battery.

Plaintiffs maintain that Defendants are liable under premises liability based on general negligence in operating an unreasonably dangerous facility without providing any security measures whatsoever. Plaintiffs argue that Defendants' actions and omissions rose to the level of gross negligence in causing the tank to explode and in failing to exercise the slightest due care to protect the public from the dangers of its industrial oil and gas fixtures, or to warn others about the potential danger posed by the Battery and its tanks.

Defendants challenge Plaintiff's attempt to amend their complaint through their opposition by making allegations of improper acts or omissions by Defendants, including "a deplorable record of environmental and safety violations,"[16] and that "a large percentage of the gases emitting from the well site were volatile organic compounds" that are "recognized as toxic."[17]

---

[14] Complaint, ¶ ¶ 15–16, Doc. 1.
[15] *Id.* ¶ ¶ 16, 19.
[16] Memorandum in opposition, p. 3–4, Doc. 10.
[17] *Id.*

The Court agrees and will not consider any allegations that are not included in the Complaint. However, the Court considers the Complaint in the most favorable light to Plaintiffs and considers all allegations in the Complaint as true. The Court is concerned about Defendants' challenge to the absence of facts to establish causation because Plaintiffs admit that the cause of the explosion is unknown. Plaintiffs do not address this argument in their opposition briefs. However, the case is in its infancy and discovery has yet to be conducted. Therefore, the Court will allow the Plaintiffs time to conduct the relevant discovery and file an amended claim to address Defendants' and the Court's concerns regarding causation as well as allegations Plaintiffs make in their opposition briefs.

The Court finds that the allegations of the absence of a barrier, fence, gates, and warning signs around the tank Battery which contained alleged toxic gases and/or explosive, near a community of residences, commerce, and a Church are sufficient to state a plausible claim for negligence and/or gross negligence should Plaintiffs be able to establish the element of causation.

*Attractive nuisance*

Plaintiffs maintain that Defendants are liable under the theory of attractive nuisance in failing to protect minors, in particular from the dangers of the Battery and the tank.

Under Louisiana's attractive nuisance doctrine, "one is negligent in maintaining an agency which he knows, or reasonably should know, to be dangerous to children of tender years, at a place where he knows, or reasonably should know, children of tender years are likely to resort, or to which they are likely to be attracted by the agency, unless he exercises

ordinary care for the protection of such indiscreet and youthful persons. *Saxton v. Plum Orchards*, 40 So.2d 791, 794 (La.1949).

A defendant is not liable unless he knew, or reasonably ought to have known, that the structure or instrumentality was alluring to children and endangered them. *Saxton*, 40 So.2d at 794. Defendants complain that Plaintiffs have failed to allege how or why Defendants knew or should have known that the oil tank was alluring to Zalee or how it endangered her.

Defendants maintain that Plaintiffs have not stated a plausible claim for attractive nuisance because they have not alleged sufficient facts to prove that Zalee was a child of "tender years." Defendants suggest that Louisiana court interpret "tender years" to mean an age of less than ten years, and that there are no reported cases that apply the attractive nuisance doctrine to a child of normal intelligence aged fourteen or older.

Defendants suggest that the doctrine is applied only in cases where children are too young and immature to understand and appreciate danger, with the majority of cases applying the doctrine involving children less than ten years old. *Peters v. Town of Ruston*, 167 So. 491, 492 (La.App. 2 d Cir. 19363); *Martin v. Sessum Serv. Corp.*, 174 So.2d 180, 182 (La.App. 4th Cir. 1965).

The court will look at whether the child possessed the requisite intelligence to appreciate the danger of his/her actions on a fact-specific basis. *See Butler v. City of Bogalusa*, 258 So.2d 599, 601 (La. App. 1st Cir), *writ denied,* 260 So.2d 323 (La. 1972). The court will consider the following factors: subjective intelligence, a child's background/education, whether the child saw any warning signs, whether the previous

warnings by others were given, testimony concerning the child's specific knowledge of the danger, and the particular type or obviousness of the danger. *Id.*

Defendants inform the Court that at least two courts have found that fourteen-year-old children are not children of immature or tender years. *See Tooraen v. New Orleans Pub. Serv., Inc.*, 243 So.2d 312, 314 (La.App. 4th Cir. 1971); *Jones v. Maryland Cas .Co.*, 256 So.2d 358, 360 (La.App. 1st Cir. 1971). Defendants argue that Plaintiffs do not allege that Zalee was too young and immature to understand and appreciate any danger posed by the oil tank.

Plaintiffs "concede[] that the Louisiana Revised Statute 92800.4(E) supersedes the attractive nuisance doctrine,"[18] but maintain that because Defendants are liable for gross negligence, § 9:2800.4(E) is not applicable. Therefore, Plaintiffs argue that the attractive nuisance doctrine of liability can be correctly applied concurrently.

Plaintiffs maintain that Louisiana jurisprudence shows multiple ways that each particular child should be evaluated for their background, inherent intelligence, and their care for safety in the face of the known and understood, and their perceived danger in connection with nontechnical and ordinary objects in situations within the capacity of the child to understand and realize. *Patterson v. Recreation and Park Commission for East Baton Rouge Parish*, 226 So.2d 211 (La.App. 1969).

*Curry v. Fruin-Colin Contracting Co.*, 202 Co.2d 345 (La.App. 1967), defines "tender years" as "the proper criterion for the age of a child [….] depends partly upon his

---

[18] Plaintiffs' opposition brief, p. 3, Doc. 10, p. 28, Doc. 11.

maturity and capacity to evaluate circumstances and that he must exercise only the care expected of his age, intelligence and experience." *Id. See also Plauche v. Consolidated Companies,* 235 La. 692, 105 So.2d 269 (La. 1958); *Cook v. Louisiana Public Utilities Co.*, 19 So.2d 297 (La. App. 1st Cir. 1944); *Ledet v. Lockport Light and Power Company*, 15 La. App. 426, 132 So. 272 (1931).

Plaintiffs allege that Zalee was fourteen (14) years old. Plaintiffs remark that Zalee could not test for a driver's license or enter a contract. She could not purchase alcohol, tobacco or firearms, nor could she vote. Under the Children's Code Zalee would not be eligible for emancipation and under the Louisiana Criminal Code, and she would be considered a "juvenile offender." Thus, Plaintiffs maintain that Zalee was a child and there is no difference in the legal definition of a child and her status of a child of "tender years."

The Court has considered the arguments and the allegations in the Complaint that must be taken as true and in the light most favorable to Plaintiffs and finds that it would be premature to dismiss Plaintiffs' claims for attractive nuisance until discovery is conducted. To that end, the Court will allow Plaintiffs time to conduct discovery and amend their Complaint to allege any further facts they deem necessary to support their claim of an attractive nuisance.

*Absolutely liability for ultrahazardous activity*

Defendants maintain that Plaintiffs have failed to allege sufficient factual allegations to state a claim for absolute liability for an ultrahazardous activity. Defendants challenge Plaintiffs' allegation that the storage of oil in a tank does not equate to the storage of a "toxic gas."

Louisiana courts have held that there are some activities in which the risk may be altogether reasonable and still high enough that the party ought not undertake the activity without assuming the consequences. *See Kent v. Gulf States Utilities Co.*, 418 So.2d 493, 498 (La. 1982). Thus, the law imposes strict liability on these "ultrahazardous activities," meaning that the injured party recovers simply by proving damage and causation. In other words, liability is imposed as a matter of policy when harm results from the risks inherent in the nature of the activity. *Kent, supra.*

Defendants remark that there are no reported cases in which the storage of oil in tanks were deemed ultrahazardous, and the cases that found that the "storage of toxic gas" is an ultrahazardous activity, involved an actual toxic (*i.e.,* poisonous) gas that escaped their container and caused harm to third parties when inhaled.

Defendants complain that Plaintiffs do not allege how the storage of oil (or gas), itself, caused the injury, or that defendants were engaged directly in the injury-producing activity, noting that Plaintiffs plead that the contents of the tank were ignited by an unknown cause. Finally, Defendants assert that Plaintiffs have failed to plead that there was no substandard conduct by a third party.

Plaintiffs maintain that Defendants are absolutely liable for the explosion of the tank because the storage of toxic gas at the Battery should be considered an ultrahazardous activity.

First, the court notes that Plaintiffs rely on allegations outside of the Complaint that will not be considered. The Court agrees with Defendants that there are insufficient facts alleged to state a cause of action for an ultrahazardous activity. However, as previously

stated, discovery has not been conducted in this matter, and the Court is not inclined to dismiss this cause of action until Plaintiffs are allowed to conduct discovery. As such, the Court will allow Plaintiffs to amend their Complaint to address the Defendants' and the Courts' concerns.

*Bystander liability*

Finally, Plaintiffs maintain that Zalee's siblings suffered bystander damages because they saw the explosion occur and immediately came upon the scene of the explosion and knew that Zalee had been seriously harmed. Defendants note that Plaintiffs alleged the following in support of a claim under Louisiana Civil Code article 2315.6(B):

- The siblings were in the vicinity of Ms. Day's house, a short distance from the Battery, where they could see and hear the explosion which caused Zalee's death.

- After hearing the tank explode, they ran outside, could see the aftermath of the explosion, and were aware that Decedent was at the Battery when it occurred.

- Upon seeing the aftermath of the explosion, the sibling immediately realized that their sister must have been gravely injured, if not killed, as a result of the explosion.

- The siblings have suffered the severe and debilitating mental distress that is foreseeable from such an event.

- The siblings have claims for mental anguish and emotional distress resulting from viewing the explosion that killed their sister or coming upon the scene of the explosion immediately thereafter.

Plaintiffs' Complaint, ¶ ¶ 37–42, Doc. 1.

Defendants maintain that Plaintiffs have failed to state a claim under Louisiana Civil Code article 2315.6 because they have failed to allege actual

Page **15** of **17**

knowledge of Zaylee's injury or death citing *Whitfield v. City of New Orleans,* 431 F.Supp.3d (E.D. La. 2019); *Rivera v. United Gas Pipeline Co.*, 697 So.2d 327, 338 (La.App. 5th Cir. 6/30/97), *writ denied,* 704 So.2d 1197 (La. 12/12/97), and *writ denied,* 704 so.2d 1197 (La. 12/12/97).

*In Whitfield*, the court found that inferring that something awful has likely occurred is not enough; while family members may reasonably infer from situations that their child has been hurt, "unless they can actually perceive the harm, they do not know whether their [family member] may yet be unharmed. They may only recover for their anguish when it arises from knowing that the tragic event has caused their [relation's] serious injury or death." *Whitfield,* 431 F.Supp.3d at 829.

Plaintiffs' rely on *Lejeune v. Rayne Branch Hosp.*, 556 So.2d 559 (La. 1990), wherein the court held that a claimant must (1) either view the accident or injury causing event or come upon the accident scent soon thereafter, (2) the victim of the traumatic injury must suffer the amount of harm that a reasonable person would be expected to suffer from the experience, (3) the emotional distress must be both serious and should only be allowed where the emotional injury is both severe and debilitating, and (4) the relationship with the victim should be such that the judge is "convinced from all the facts that there existed such a rapport between the victim and the on suffering sock as to make the causal connection between the defendants conduct and the shock understandable. *Lejeune, supra.*

Louisiana Civil Code article 2315.6 is a codification of the *Lejeune* decision, which allows certain persons to recover damages for mental anguish or emotional distress

that they suffer as a result of witnessing another person's injury, as long as the witness actually views the event that injures the other person, or the witness comes upon the scene of the event soon after. *Trahan v. McManus*, 728 So.2d 1273, 1278 (La.1999). The Civil Code limits recovery for these damages to a limited class of persons—the witness in question must be a spouse, child, grandchild, parent, grandparent, or sibling of the injured person. Louisiana Civil Code article 2315.6.

Plaintiffs note that they allege that the siblings viewed the explosion that killed Zalee or came upon the scene of the explosion soon thereafter,[19] they were aware that Zalee was at the Battery when the tank exploded and realized that as soon as they saw that the tank had been blown hundreds of feet away by the explosion, they immediately realized that Zalee had been severely harmed and almost certainly killed.

The Court finds that taking Plaintiffs' allegations taken as true and in a favorable light to them, Plaintiffs have sufficiently plead an action for bystander liability.

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss (Doc. 4) will be denied.

**THUS DONE AND SIGNED** in Chambers this 12th day of April, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[19] Complaint, ¶ 37, Doc. 1.